UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELYN WILKINS,                                      Case No. 13-12425

             Plaintiff,                   Victoria A. Roberts
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                     Michael Hluchaniuk
                                                     United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 13, 14)**
**AND PLAINTIFF'S MOTION TO REMAND (Dkt. 17)**

**I.     PROCEDURAL HISTORY**

      **A.     Proceedings in this Court**

On June 3, 2013, plaintiff Evelyn Wilkins filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 3).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Victoria A. Roberts referred this matter to the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income.  (Dkt. 4).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 13, 14).  Plaintiff

also filed a reply brief in support of her motion for summary judgment.  (Dkt. 16).

And, on December 30, 2013, plaintiff filed a motion to remand pursuant to

1

sentence six of the Social Security Act.  (Dkt. 17).  The Commissioner filed a

response to that motion on January 30, 2014.  (Dkt. 19).  These motions are now

ready for report and recommendation.

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on

November 13, 2010, and her claim for supplemental security income benefits on

November 17, 2010, both alleging disability beginning December 26, 2008.  (Dkt.

10-5, Pg ID 161-65, 168-69).  Plaintiff's claims were initially disapproved by the

Commissioner on March 31, 2011.  (Dkt. 10-3, Pg ID 87, 96).  Plaintiff requested

a hearing and on October 20, 2011, plaintiff appeared with counsel before

Administrative Law Judge ("ALJ") Roy L. Roulhac, who considered the case de

novo.  (Dkt. 10-2, Pg ID 67-85).  In a decision dated February 7, 2012, the ALJ

found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 57-63).  Plaintiff

requested a review of this decision, and the ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits,[1] the

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Appeals Council on February 28, 2013, denied plaintiff's request for review. (Dkt. 10-2, Pg ID 44-49); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1955 and was 56 years old at the time of the administrative hearing, and 53 years of age on the alleged disability onset date. (Dkt. 10-2, Pg ID 71, 161).  Plaintiff had past relevant work as an assembler and a packager.  (Dkt. 10-2, Pg ID 75).  In denying plaintiff's claims, defendant Commissioner considered arthritis of the right hip and knee, diabetes, hypertension, high cholesterol, and forgetfulness.  (Dkt. 10-6, Pg ID 202).

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that although plaintiff worked after the alleged disability onset date, this work activity did not rise to the level of substantial gainful activity, and thus that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 10-2, Pg ID 59).  At step two, the ALJ found that plaintiff had

the following medically determinable impairments: mild degenerative arthritis of the right knee, obesity, diabetes, abdominal pain, and alcohol abuse, but that plaintiff does not have a medically determinable mental impairment. (Dkt. 10-2, Pg ID 59-62). The ALJ concluded that plaintiff does not have an impairment or combination of impairments that have significantly limited her ability to perform basic work-related activities for twelve consecutive months, and that plaintiff therefore does not have a severe impairment or combination of impairments. (Dkt. 10-2, Pg ID 59-62). A person who does not have a severe impairment will not be found "disabled." 20 C.F.R. § 404.1520(c). The ALJ concluded, therefore, that plaintiff has not been under a disability, as defined by the Social Security Act, through the date of the decision. (Dkt. 10-2, Pg ID 62-63).

## B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erroneously determined that plaintiff did not have any severe impairment. Plaintiff asserts that an impairment can be considered non-severe only if it is a slight abnormality that minimally affects work regardless of age, education, and experience. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89-90 (6th Cir. 1985). Plaintiff contends that her physical and mental impairments amount to more than "slight abnormalities." Specifically, plaintiff asserts that she was examined, at the request of the Social Security Administration, by Dr. Nick Boneff, Ph.D., to assess her psychological state. Dr.

4

Boneff noted that plaintiff was unable to remember her appointment on her own and that she even called his office the morning of the appointment. (Tr. 253). Moreover, plaintiff stated to Dr. Boneff that she believed her neighbors were plotting against her. *Id.* As a result of his examination, Dr. Boneff assessed plaintiff with adjustment disorder and difficulties with short term memory. (Tr. 254).

Plaintiff contends that she also suffers from abdominal impairments, high blood pressure, back pain, and history of a heart attack, and that her obesity affects her ability to perform activities of daily living and exacerbates her already painful impairments. (Tr. 265, 269). Plaintiff also claims that her impairments affect her ability to function on a daily basis. She testified that she experiences daily, severe pain and treats twice a month, and, as a result, her daily activities are limited. (Tr. 37). Plaintiff further testified that her typical day consists of taking her medication, eating, walking for a block and a half, and sitting/laying down with a heating pad. (Tr. 39). Plaintiff asserts that she experiences pain all day, every day and, as a result of her pain and medication side effects, she takes naps during the day. (Tr. 39-40).

According to plaintiff, as a result of her physical impairments, she is limited to lifting 5 pounds, standing for 15 minutes, and sitting for a few hours a day. (Tr. 41). For the rest of her day, plaintiff claims that she lays down three or more times

5

and may nap for a few hours a day.  (Tr. 41).  Plaintiff argues that, as a result of

her impairments, she experiences problems with concentration that have worsened

over time.  She forgets to take her medicine and has trouble completing tasks that

she begins.  And, plaintiff states that she attempts to isolate and does not enjoy

being around other people.  *Id*.

Plaintiff argues that because the ALJ erred in determining that she had no

severe impairments, and he did not proceed to any other steps of the sequential

evaluation process to determine if plaintiff was disabled.  Plaintiff contends that

therefore, at a minimum, a remand is necessary in order to include the non-

exertional limitations that impact her ability to work.

### C.      The Commissioner's Motion for Summary Judgment

The Commissioner argues that substantial evidence supports the ALJ's

finding at step two of the sequential analysis that plaintiff did not have a severe

impairment, and that plaintiff's arguments to the contrary should be rejected.

According to the Commissioner, the severity regulation serves the purpose of

administrative efficiency by allowing the Commissioner to screen out entire claims

where the claimant's alleged impairment or combination of impairments is found

to impose no significant work-related limitations.  *See Farris v. Sec'y of Health &*

*Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).  The Commissioner contends that

the ALJ here carefully analyzed the record evidence with regard to plaintiff's

condition and that substantial evidence supports his conclusion at step two of the sequential evaluation that plaintiff had no severe impairment or combination of impairments.

The Commissioner notes that plaintiff argues that the ALJ erred in failing to find that her mental impairment caused problems in concentration, and that she relies on the consultative psychological examination report of Dr. Boneff, in which he opined that plaintiff was limited to simple work activities that entailed remembering and executing several-step repetitive procedures, with little in terms of exercising independent judgment or making decisions. (Tr. 255). The Commissioner contends, however, that plaintiff's reliance on Dr. Boneff's opinion to support her alleged concentration deficits is misplaced. As the ALJ reasoned, Dr. Boneff's conclusion was not consistent with his other examination findings. (Tr. 23). Dr. Boneff noted that plaintiff retained the capacity to concentrate, "as evidenced by performance on calculation tasks and also strengths in immediate memory and the ability to pay attention," and that plaintiff had only "slight difficulties" with short term memory. (Tr. 254). Additionally, as the ALJ noted, contrary to Dr. Boneff's conclusion that plaintiff could not handle much in terms of exercising judgment or making decisions, this same examiner noted that she "displayed strengths in judgment and impulse control." (Tr. 254). The Commissioner contends that Dr. Boneff's examination findings do not support

7

plaintiff's claim of significant mental limitations. The Commissioner further contends that the ALJ noted that plaintiff had not alleged any specific mental impairments, or sought either psychological or psychiatric treatment. (Tr. 23). Plaintiff admitted that she followed written instructions well and claimed she needed no reminders on self care issues or to take her medication. (Tr. 175, 178). The Commissioner concludes therefore that substantial evidence supports the ALJ's finding that plaintiff did not have a severe mental impairment.

The Commissioner also argues that the ALJ carefully reviewed the medical and other evidence of record and properly concluded that plaintiff had no severe physical impairments. Indeed, the Commissioner contends, State reviewing physician, Charles Edmonds, M.D., reviewed the medical evidence and opined in March 2011 that plaintiff had nonsevere impairments. (Tr. 68-69). *See* Social Security Ruling (SSR) 96-6p (State reviewing physicians are considered experts in evaluating disability). The ALJ found that, with regard to knee pain, x-rays confirm only mild osteoarthritis. (Tr. 22). He also noted plaintiff's normal musculoskeletal examinations, with no indications of asymmetry, atrophy, swelling, discoloration, tenderness, crepitus, or effusion. (Tr. 22). He noted plaintiff's full range of motion and lack of discomfort when climbing stairs or getting on/off examination tables. (Tr. 22). The ALJ further noted plaintiff's stable gait and ability to perform toe, heel, and tandem walking. (Tr. 22). He

observed that her medication helped relieve pain and was taken only on an "as needed basis." (Tr. 22, 258).

The Commissioner further argues that, looking to other alleged impairments, the ALJ noted the complaints of abdominal pain, and plaintiff's denial of vomiting, diarrhea, constipation, change in appetite, or jaundice. (Tr. 22, 218). He noted that her physical examinations reveal no abdominal deficits (such as tenderness or masses), and that the ultrasound studies' (pelvic and abdominal) results were considered "benign." (Tr. 22, 224-54, 259). During her ER visits for abdominal pain, clinical imaging demonstrated, at most, constipation yet normal bowel gas patterns. (Tr. 234). Furthermore, the Commissioner continues, the ALJ considered the evidence and impact of obesity on other impairments, in accordance with SSR 02-1p. (Tr. 22, 220, 259). He also evaluated notations of plaintiff's high cholesterol. (Tr. 22, 227). The Commissioner contends that the ALJ correctly reasoned that there was no medical evidence suggesting any mobility or functional limitations in the record and no treating or examining physician concluded that the obesity has any significant exacerbating effect on plaintiff's other impairments. (Tr. 22).

The Commissioner further argues that the ALJ noted that plaintiff had been diagnosed with diabetes, as her blood glucose levels have been elevated, but reasonably concluded from the record evidence as a whole that her symptoms are

fairly well controlled.  (Tr. 22).  Specifically, the ALJ noted that, notwithstanding some higher blood glucose readings, plaintiff had not required emergency care or hospitalization for control of her diabetes.  (Tr. 22, 236, 243).  She had no polyuria, polydipsia, or polyphagia, no history of renal disease, diabetic ketoacidosis, or peripheral vascular disease, and no leg ulcers or statis dermatitis. She was not insulin-dependent, and only took oral medications.  (Tr. 22, 258, 260).

The Commissioner argues finally that the ALJ reasonably found that plaintiff's activities of daily living support the conclusion that her impairments do not limit her functionality.  (Tr. 22-23).  The Commissioner notes that despite her claim that she could walk no more than 1.5 blocks, plaintiff admitted that she walked in the park and also exercised by walking for 30 minutes per day.  ( Tr. 258).  The ALJ noted that, due to her lack of a car, plaintiff stated that she must walk to travel, including to and from public transportation.  (Tr. 22, 176).  Plaintiff reported that she could walk up to a ½ mile before needing to rest for 30 minutes. (Tr. 178).  She also testified that she could not stand longer than 15 minutes; yet, she reported she stood in line at temporary employment agencies for 2-3 hours to obtain employment.  (Tr. 174).  The ALJ noted that plaintiff reported performing housecleaning without any difficulty, as well as attending to her personal care and cooking.  (Tr. 22, 174-75, 253).  She also did laundry, shopped for groceries and

10

handled her own financial affairs and reported no use of assistive devices such as a cane, walker, or wheelchair. (Tr. 175-76, 179). Thus, the Commissioner concludes, substantial evidence supports the ALJ's conclusion that, while plaintiff's symptoms could reasonably be due to her impairments, the daily activities that she continued to engage in revealed that her symptoms were not as severe as she alleged.

According to the Commissioner, the ALJ correctly ended the analysis at step two in this case. *See Gist v. Sec'y of Health & Human Servs.*, 736 F.2d 352, 357–58 (6th Cir. 1984) (Secretary does not have to proceed beyond step two in the analytical process if substantial evidence supports the ALJ's step two finding). The ALJ properly concluded that the evidence of record failed to establish that plaintiff's conditions impose more than a minimal limitation on her ability to perform basic work activities, and this Court should affirm the Commissioner's well-supported findings, as there is no overwhelming proof of disability.

### D.    Plaintiff's Reply Brief

Plaintiff responds that this case should be remanded in order to properly evaluate plaintiff's severe mental health impairments at step two of the sequential evaluation. Plaintiff argues that, in his decision, the ALJ gives Dr. Boneff little weight because he found that the doctor's conclusions were not supported by his own findings. (Tr. 23). The ALJ further found that plaintiff's lack of treatment

for her mental health condition constitutes proof of a non-severe impairment.
Plaintiff concedes that the record is devoid of any mental health treatment during
the relevant time period.  However, plaintiff continues, during the course of her
application, medical notations caused the Social Security Administration to
question plaintiff's current mental state.  As the ALJ explained in his decision,
"despite clinical and diagnostic findings confirming no irregularities or pregnancy,
the claimant maintained she was pregnant.  As such, she was sent for a
consultative examination with Dr. Boneff, who concluded that the claimant was
limited" in her ability to perform work-related tasks.  (Tr. 23).  Plaintiff argues that
although the ALJ determined that Dr. Boneff's own findings did not support his
conclusions, the ALJ's findings are erroneous and the ALJ is attempting to
substitute his own judgment for that of a trained medical professional.  During her
examination, plaintiff reported feeling that "usually there is somebody there" when
asked if she hears things.  (Tr. 253).  Plaintiff further explained that she is
paranoid that her neighbors are plotting against her.  *Id.*  Dr. Boneff also reported
that "Plaintiff feels angry and depressed these days."  (Tr. 253).  As a result of his
examination, Dr. Boneff diagnosed plaintiff with "adjustment disorder with
depressed mood; alcohol abuse, mild" and assessed a Global Assessment of
Functioning (GAF) score of 50, indicating severe symptoms.  (Tr. 254).  He then
concluded that plaintiff did retain the capabilities to engage in some concentration

12

and memory tasks, that she is limited to "simple work type activities, remembering and executing a several step repetitive procedure, with little in the way of independent judgment or decision making required."  (Tr. 255).

Plaintiff further contends that, with regard to a claim for social security benefits, an ALJ may not substitute his own medical judgment for that of an examining doctor where evidence supports the doctor's findings.  *Meece v. Barnhart*, 192 Fed. Appx. 456 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor") (*citing Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).  Plaintiff argues that, in this case, the ALJ failed to give any weight to the medical opinions in the record regarding plaintiff's mental health impairments, and therefore his conclusion that plaintiff's mental impairments at step two are not "severe" is not supported by substantial evidence.  Furthermore, plaintiff continues, the Sixth Circuit has previously stated that opinions and diagnoses of the examining mental health consultants are not to be evaluated lightly, and that they can supply sufficient evidence to establish a mental impairment.  *Roush v. Sec'y of Health & Human Servs.*, 902 F.2d 34 (6th Cir. 1990) (unpublished).  Plaintiff further argues that the ALJ's conclusion that the plaintiff's lack of treatment offers proof of no severe impairment at step two constitutes reversible error.  According to plaintiff, the Sixth Circuit Court in

13

*Blankenship* specifically warned that the failure to seek mental health treatment may be the result of mental illness rather than evidence that a mental impairment is not severe. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Plaintiff further argues, for the first time, that a remand pursuant to Sentence Six is warranted in this case because the Appeals Council order added Exhibit 5F to the record, which contains "Medical Records from Professional Medical Group September 27, 2012 - November 28, 2011." (Tr. 9).[2]  Plaintiff contends that without including these medical records, the medical evidence is devoid of any treatment notes regarding her physical complaints. Plaintiff asserts that although these records existed at the time of the hearing, plaintiff was not able to obtain them before the ALJ issued his decision, due to the delay of the medical facility. According to plaintiff, this medical evidence supports a finding that plaintiff suffers from "severe" physical impairments. Plaintiff therefore asserts that the Court should order a reversal and an immediate award of benefits, or, in the alternative, a remand for further proceedings.

### E.   Plaintiff's Motion for Sentence Six Remand

Plaintiff filed a second, separate motion to remand pursuant to sentence six. Plaintiff argues that the decision of the ALJ should be remanded in light of new

---

[2] Plaintiff asserts that although this is the title given to the evidence in the Appeals Council order, the evidence actually represents the time period of September 27, 2010 through November 28, 2011.

14

and material evidence, which the Appeals Council accepted and made part of the record after the ALJ issued his decision.  Plaintiff contends that the evidence contained in Exhibit 5F is new and was not part of the record at the time of the hearing, and thus not available to the ALJ.  Plaintiff asserts that although these records existed at the time of the hearing, they were not able to be obtained, due to the delay of the medical facility, before the ALJ issued his decision.  (Tr. 195).  In fact, plaintiff continues, the existence of these records and plaintiff's difficulty obtaining them were discussed during the hearing and the record was subsequently left open.  (Tr. 195).  However, the ALJ wrote and issued his decision without consulting these additional records.

According to 42 U.S.C. § 405(g), "[t]he court may … at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"  Plaintiff contends that in this case she has good cause for her failure to submit this evidence at the time of her hearing.  According to plaintiff, in non-adversarial disability determination proceedings, the Agency must see that justice is carried out.  *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) ("It is the ALJ's duty to investigate the facts and develop the arguments for and against granting benefits" because "Social Security proceedings are inquisitorial rather

than adversarial."). To satisfy this duty, the ALJ "must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts'" and "must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* at 105 (citation omitted). Plaintiff argues that in this case, the ALJ recognized that plaintiff's medical evidence was sparse. Yet, despite his knowledge that there was outstanding medical evidence showing plaintiff's only ongoing treatment, the ALJ issued his decision before consulting these records.

Plaintiff further argues that the additional records contained in Exhibit 5F are material and pertain to the relevant time period in question, as plaintiff's alleged onset date is December 26, 2008, and her Date Last Insured is December 31, 2013, and Exhibit 5F contains "Medical Records from Professional Medical Group-September 27, 2012 – November 28, 2011." (Tr. 9). Although plaintiff alleges severe pain and physical impairments, plaintiff contends that without the inclusion of these medical records, her medical evidence is devoid of any treatment notes regarding her physical complaints. In this case, the ALJ found that substantial evidence did not support a finding that plaintiff had a severe physical impairment at step two of the sequential evaluation process. However, plaintiff contends, he also did not have the records from Professional Medical Center from 2010 – 2011, where plaintiff treated for her physical impairments.

16

Plaintiff argues that in light of this new and material evidence, while this Court may not consider the evidence pursuant to the motion for summary judgment requesting relief pursuant to sentence four, the evidence can be considered in conjunction with a motion to remand for further administrative proceedings pursuant to sentence six of the Social Security Act. Therefore, plaintiff seeks to have this case remanded in light of new medical evidence presented to the Appeals Council, which contains information material to the outcome of this case.

## F.    The Commissioner's Response to Plaintiff's Motion to Remand

The Commissioner argues that plaintiff's motion to remand should be denied because she did not timely request the relief she seeks. According to the Commissioner, plaintiff should have requested relief under sentence six in the motion for summary judgment she filed in September 2013, but she did not. Instead, she sought a remand exclusively under sentence four of the Social Security Act. The Commissioner asserts that it was only after both parties had filed their briefs in the main that plaintiff decided to seek this alternate relief in both the motion to remand and in a simultaneously-filed reply brief. Indeed, the Commissioner continues, plaintiff does not explain her failure to raise this claim in a timely manner at all, and she therefore has waived it. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal."); *see also*

*Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (providing that remand under sentence six was inappropriate where plaintiff failed to cite the relevant section of the statute or argue the merits of remand under that provision). The Commissioner continues that granting plaintiff the relief she seeks is also counter to the well-established policy that parties should conserve judicial resources (and indeed, those of their opponents) by litigating matters efficiently and expeditiously. *Cf.* Fed. R. Civ. P. 1. To this end, the Commissioner asserts, courts have required that parties raise arguments at the earliest time possible and avoid piecemeal litigation. *Cf.* E.D. Mich. Local R. 7.1(b)(2) ("A party must obtain leave of court to file more than one motion for summary judgment. For example, a challenge to several counts of a complaint generally must be in a single motion."). The Commissioner explains that, for similar reasons, the Sixth Circuit rejected an argument that a magistrate judge denied a Social Security plaintiff due process by not holding oral argument, at which the plaintiff intended to raise arguments he did not include in his brief. The Sixth Circuit explained that the plaintiff "was free to present any and all relevant arguments in his initial submission to the court, and there was nothing in the magistrate judge's order to mislead Cline into thinking that this initial submission did not have to be complete." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150-51 (6th Cir. 1996). Along similar lines, Judge Lawson of this Court explained that,

barring exceptional circumstances, a court will not entertain arguments not raised before the magistrate: "The Magistrates Act was not intended to 'give litigants an opportunity to run one version of their case past the magistrate, then another past the district court.'"  *Whittum v. Saginaw Cnty.*, 2005 WL 3271810, at *4 (E.D. Mich. Nov. 22, 2005) (internal citation omitted).  The Commissioner asserts that plaintiff does not allege that any such special circumstances exist here.  In fact, she offers no explanation why she should have a second bite at the apple.  According to the Commissioner, courts in other jurisdictions have ruled similarly.  As the Eighth Circuit has explained, "[A] claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review.  To hold otherwise would allow a claimant to raise new claims to the district court and thus effectively have two opportunities for judicial review."  *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) (per curiam)).  And, as the First Circuit succinctly stated: "Parties must take before the magistrate, 'not only their best shot but all of their shots.'"  *Borden*, 836 F.2d at 6 (internal citation omitted).  The Commissioner contends that plaintiff's motion is contrary to the policy underlying this authority, and it is significant that plaintiff offers no reason—let alone a compelling one—for her failure to seek relief under sentence six in the motion for summary

19

judgment she submitted to this Court in September 2013.

The Commissioner further argues that plaintiff's attempt to raise a new legal theory at the eleventh hour prejudices the Commissioner, whose counsel must in essence prepare two briefs. The Commissioner acknowledges that prejudice to the Commissioner in a single case may not be particularly extensive, but notes that if plaintiff is allowed to raise a new legal theory in this case, there is no principled reason that other plaintiffs cannot do the same in their cases after having been unsuccessful with the arguments they presented to the magistrate judge assigned to their cases.

The Commissioner continues that even if this Court were to excuse plaintiff's lack of timeliness and waiver, her motion fails on the merits. According to the Commissioner, plaintiff has not demonstrated that the evidence she cites warrants remand under sentence six for consideration by the ALJ. A reviewing court may remand a case under sentence six for consideration of additional evidence only if the party seeking remand proves that the additional evidence is new and material, and that she had good cause for failing to incorporate the additional evidence into the record during the administrative hearing. 42 U.S.C. § 405(g); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Sec'y of Health & Human Serv's.*, 727 F.2d 551, 554 (6th Cir. 1984). The Commissioner asserts that plaintiff has not met these requirements.

First, the Commissioner argues that plaintiff has not shown the requisite good cause for not submitting this evidence to the ALJ before he reached his February 2012 decision. Plaintiff claims she had good cause for not submitting the documents in Exhibit 5F earlier because she had requested them from the medical center but did not receive them in time. Plaintiff acknowledged before the Appeals Council that the ALJ had held the record open to allow additional time to obtain these records, "graciously" allowed 4 months beyond the October 11, 2011 hearing date, and did not issue a decision until February 7, 2012. (Tr. 195). The Commissioner asserts that nothing in the record indicates that plaintiff attempted to reach the ALJ to request additional time to keep the record open beyond that point; plaintiff merely blamed the facility for being notoriously late with records production. (Tr. 195). Yet, plaintiff argues here that the ALJ, with knowledge of these outstanding records, should not have issued his decision before "consulting these records." The Commissioner notes that the ALJ held the administrative hearing on October 20, 2011 (Tr. 28-46), and he issued his decision on February 7, 2012. (Tr. 18-24). Plaintiff testified at the hearing that she had been going to Professional Medical Center every two weeks for a few months (Tr. 42), and these were the records that plaintiff referenced as still outstanding as of the date of the hearing. (Tr. 31). The Commissioner concludes that any outstanding records to which plaintiff put the ALJ on notice must have predated at least October 20,

21

2011.  Yet, some of these records upon which she now relies postdate the hearing.

(Tr. 197, 198).  The Commissioner contends that plaintiff does not explain how

the ALJ could fairly be put on notice of records that did not yet exist, and it is

similarly hard to see how the ALJ could be faulted for not obtaining them.

The Commissioner continues that while a post-decision record may be

"new" insofar as it did not exist prior to the administrative proceeding, *Foster v.*

*Halter*, 279 F.3d 348, 357 (6th Cir. 2001), its recent provenance does not equate to

good cause for a failure to have presented it earlier.  The good cause requirement

is satisfied if there is a "valid reason" for the failure to submit evidence at a prior

hearing.  *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir.

1986).  An assertion that good cause was present simply because the proffered

evidence documented post-adjudication examination or treatment conflates the

requirement that the additional evidence be new with the requirement that a

plaintiff have good cause for his failure to submit the additional evidence earlier.

The Sixth Circuit has explained that "this circuit has taken a harder line on the

good cause test" than simply relying on the age of the evidence, and so has

identified this very flaw.  *See id.*  The Commissioner notes that plaintiff argues

that she was finally able to obtain these records after an extensive delay by the

medical center, but contends that this explanation is unsatisfying given that (1)

plaintiff managed to submit other medical records in a timely fashion, and (2)

22

plaintiff fails to explain why she could not have undergone some of the examinations or treatments documented in these exhibits prior to the issuance of the ALJ's decision.  *Cf. Oliver*, 804 F.2d at 966 (finding a lack of good cause because the plaintiff did "not have a valid reason for his failure to obtain a right quadriceps [sic] biopsy, a neuro-psychological examination, or a university neurological evaluation prior to the hearing").

The Commissioner further argues that plaintiff has not shown that the additional evidence is material.  To show materiality, plaintiff must show a reasonable probability that the ALJ would have reached a different decision had he been presented with the new evidence.  The Commissioner contends that, in her motion, plaintiff does not explain why the ALJ would have been likely to change his mind if he had the benefit of these records, therefore she has waived any opportunity to argue the materiality of such documents.  Plaintiff merely argues that the ALJ did not have these records when he concluded that she had no severe impairment, but plaintiff points to no specific records within this evidence in support of her argument that it was material within the context of sentence six.  Thus, plaintiff has not demonstrated the requisite materiality for a sentence six remand and her motion for a sentence six remand should be denied.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

　　If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

26

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

27

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

28

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

## C.    Analysis

### 1.    The ALJ's Conclusion that Plaintiff's Impairments–Alone or in Combination–are Not Severe is Supported by Substantial Evidence

As set forth above, the ALJ found that plaintiff has several medically determinable impairments: mild degenerative arthritis of the right knee, obesity, diabetes, abdominal pain, and alcohol abuse.  (Tr. 20).  The ALJ then concluded that none of these impairments, alone or in combination, are severe within the meaning of the Act.  (Tr. 20-23).  The ALJ also found that plaintiff did not have a medically determinable mental impairment.  (Tr. 23).  Because the ALJ found that plaintiff did not have a severe impairment at step two of the sequential analysis, he did not proceed further with the disability analysis.  Plaintiff argues that this conclusion is not supported by substantial evidence.

At step two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . ., or a combination of impairments that is severe and meets the durational requirement, then [he] is not disabled.").  "To

surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled' as defined by the Act. . . ." *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007).  A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.  *See id.*

In the Sixth Circuit, step two of the sequential disability process is considered a "de minimis hurdle" designed to subject to dismissal only those claims that are "totally groundless" from a medical standpoint.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age,

education, and experience." *Id.* As the Sixth Circuit has recognized, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir. 2001) (citation omitted). Nonetheless, not all impairments are severe: "The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time." *Despins*, 257 Fed. Appx. at 930 (citations omitted). "In considering whether a claimant has a severe impairment, an ALJ must not accept unsupported medical opinions or a claimant's subjective complaints." *Younan v. Comm'r of Soc. Sec.*, 2012 WL 5439286, at *8 (E.D. Mich. Aug. 14, 2012) (citing *Weckbacher v. Comm'r of Soc. Sec.*, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012)), *adopted by* 2012 WL 5439280 (E.D. Mich. Nov. 7, 2012).

The ALJ here addressed each of plaintiff's medically determinable impairments and found that they were not "severe," and thus found that plaintiff was not disabled at step two of the sequential evaluation. With respect to plaintiff's knee pain, the ALJ acknowledged that x-rays confirm mild osteoarthritis in plaintiff's right knee, but that she had normal musculoskeletal examinations with no asymmetry, atrophy, swelling, discoloration, tenderness,

crepitus, or effusion, a full range of motion and no discomfort when climbing stairs or getting on/off the examination table.  (Tr. 22, citing Tr. 221, 242, 259-60). Plaintiff had a stable gait and can toe, heel and tandem walk, and she only takes pain medication on an "as needed" basis.  (Tr. 22, citing Tr. 242, 259-60).  The ALJ also noted plaintiff's complaints of abdominal pain, but that physical examinations reveal no abdominal deficits, ultrasounds were considered "benign," and plaintiff denies vomiting, diarrhea, constipation, changes in appetite, and jaundice.  (Tr. 22, citing Tr. 218, 224-25, 259).  The ALJ also acknowledged that plaintiff has been diagnosed with diabetes, and that her blood glucose levels had been elevated, but concluded that overall her symptoms were fairly well controlled, as she has never required emergency care or hospitalization for control of her blood sugars, and she has no polyuria, polydipsia, or polyphagia, and no history of renal disease, diabetic ketoacidosis, or peripheral vascular disease.  (Tr. 22, citing Tr. 236, 243, 258, 260).  The ALJ noted that plaintiff is "obese" and has high cholesterol, but also noted that there is no medical evidence suggesting any mobility or functional limitations and no treating or examining physician has indicated that plaintiff's obesity has any significant exacerbating effect on her other impairments.  (Tr. 22, citing Tr. 220, 222, 227, 230, 243, 249, 259).  Finally, the ALJ noted that plaintiff's activities of daily living confirm that her impairments do not limit her functionally, as she exercises by walking 30 minutes

daily, walks to travel, is capable of standing in line two to three hours to obtain employment, and attends to her personal care and shopping needs without difficulty.  (Tr. 22-23, citing Tr. 33-42, 173-80, 253, 258).

Plaintiff does not offer any medical evidence contradicting the ALJ's findings, but instead relies on her testimony that she experiences daily, severe pain and that she is substantially limited in her ability to lift, stand, walk and sit.  (Dkt. 13).  However, plaintiff's testimony, standing alone, is insufficient to establish that the ALJ erred in finding that plaintiff's physical impairments were not severe.  *See Younan*, 2012 WL 5439286, at *8 ("In considering whether a claimant has a severe impairment, an ALJ need not accept unsupported medical opinions or a claimant's subjective complaints.").  It is well-settled that the mere existence of an impairment does not mean that the impairment is severe within the meaning of the second sequential step, and "[w]hen doctors' reports contain no information regarding physical limitations on the intensity, frequency, and duration of pain associated with a condition, [the Sixth Circuit] has regularly found substantial evidence to support a finding of no severe impairment."  *See Long*, 1 Fed. Appx. at 331.  Accordingly, the undersigned suggests that the ALJ's opinion that plaintiff's physical impairments are not "severe" is consistent with and supported by the record evidence, and should be affirmed.

Plaintiff also complains that the ALJ erred in finding that she did not have a

34

medically determinable mental impairment, as the State agency consultative examiner, Dr. Boneff, assessed her with adjustment disorder and difficulties with short term memory. (Dkt. 13). The ALJ acknowledged that Dr. Boneff concluded that plaintiff was limited to simple work-type activities, remembering and executing several-step repetitive procedures, with little in the way of independent judgment or decision-making required, but assigned little weight to Dr. Boneff's opinion, finding it inconsistent with his own findings in the consultative examination, and the record as a whole. (Tr. 23). Specifically, Dr. Boneff concluded that plaintiff had intact concentration and that she displayed strengths in judgment ("as evidenced by performance on calculation tasks and also strengths in immediate memory and the ability to pay attention but slight difficulties with short term memory"), impulse control, and abstract thinking. (Tr. 23, citing Tr. 254-55). The ALJ further observed that plaintiff had not alleged any mental health impairments and has not sought out any psychological or psychiatric treatment, and thus concluded that there is no medically determinable mental impairment in this case. (Tr. 23).

Plaintiff acknowledges that the record is devoid of any mental health treatment during the relevant time period, but argues that the ALJ here is improperly playing doctor and substituting his opinion for that of the examining doctor. However, an ALJ does not "play doctor" by evaluating the medical

35

evidence because he is required to do so under the regulations.  20 C.F.R.

§§ 404.1527(c), 416.927(c).  Rather, an ALJ may properly consider "the lack of

medical evidence supporting [the doctor's] opinion," and "the inconsistency of his

opinion with objective testing results."  *See id.*; *see also Simpson v. Comm'r of

Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) ("The ALJ is not bound to

accept the opinion or theory of any medical expert, but may weigh the evidence

and draw his own inferences.") (quoting *McCain v. Dir., OWCP*, 58 Fed. Appx.

184, 193 (6th Cir. 2003) (citation omitted)).  As set forth above, the ALJ here

sufficiently explained his reasons for affording Dr. Boneff's opinion "limited

weight" and his reasoning is supported by substantial evidence.  *See White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (finding sufficient

rationale for discounting treating physician's assessment of claimant's ability to

work where ALJ gave "three basic reasons").

Plaintiff also argues that the ALJ's conclusion that plaintiff's lack of

treatment offered proof of no severe impairment constitutes reversible error, citing

*Blankenship*.  In *Blankenship*, however, the court found considerable medical

evidence of mental health treatment prior to the claimant's date last insured which

supported the existence of a mental health impairment during the relevant period.

874 F.2d at 1123-24 (reversing finding of no severe impairment because record

contained diagnoses and remarks from a number of treating physicians and

psychologists to the effect that claimant was "'unable to work . . . due to the complexity of her health problems.'"); *see also Childrey v. Chater*, 1996 WL 420265, at *2 (6th Cir. July 25, 1996) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her "'not yet able to really care for herself alone,'" reports from two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary). Here, there is no medical evidence of a mental impairment in plaintiff's treating physician's records prior to plaintiff's date last insured. The record reveals no observations of symptoms of mental illness and no complaints relating to her claimed mental impairment. *See Michael v. Astrue*, 2010 WL 1994905, at *5 (E.D. Ky. May 19, 2010) (discounting reliance on *Blankenship* where claimant produced no medical evidence of mental health problems prior to the date last insured). Moreover, the Sixth Circuit has held that a claimant's failure to seek mental health treatment "should not be *a determinative factor* in a credibility assessment" relating to the existence of a mental impairment. *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) (emphasis added, quoting *Blankenship*, 874 F.2d at 1124)). The ALJ's decision here reflects that he did not treat plaintiff's failure to seek treatment as a "determinative factor" in his disability determination, but rather considered it along with other evidence relating to plaintiff's allegations in finding

37

that plaintiff had no severe mental impairments.  Further, plaintiff sought

treatment for her physical impairments, undermining a claim that she was unable

to seek treatment for her a mental condition.  Accordingly, the undersigned

suggests that plaintiff's lack of mental health treatment was not a "determinative

factor" in assessing plaintiff's credibility, but was properly considered by the ALJ.

Therefore, plaintiff's claim of error should be denied, and the findings of the

Commissioner affirmed.[3]

### 2.    Plaintiff is not Entitled to a Sentence Six Remand

Plaintiff filed a subsequent motion requesting that this case be remanded

under sentence six of section 405(g) for consideration of post-decision evidence

from Professional Medical Center that she submitted to the Appeals Council.  (Tr.

267-88).  As an initial matter, the undersigned notes that plaintiff's sentence-six

motion is procedurally improper.  *See* E.D. Mich. L.R. 7.1 (providing that parties

need leave of court before filing a second motion for summary judgment); *see also*

*Emmons v. Comm'r of Soc. Sec.*, 2014 WL 1304936, at *1 (E.D. Mich. Feb. 13,

2014), *adopted by* 2014 WL 1304938 (E.D. Mich. Mar. 31, 2014).  In *Emmons*

---

[3] Plaintiff also argues, for the first time in her reply brief, that this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of post-decision evidence submitted to the Appeals Council.  (Dkt. 16).  However, arguments raised for the first time in a reply brief are generally not properly before the court, *see Paul v. Henri-Line Mach. Tools, Inc.*, 2012 WL 6642494, at *6 (E.D. Mich. Dec. 20, 2012) ("A reply is not the proper place to raise an argument for the first time.") (collecting cases), and accordingly plaintiff's arguments for remand pursuant to sentence six should be denied.  Plaintiff's separate motion for remand pursuant to sentence six will be addressed below.

(which the undersigned notes involves the same plaintiff's attorney as in the instant case), the plaintiff filed a motion for summary judgment, and the magistrate judge issued a report and recommendation concluding that, based on the evidence before the ALJ, plaintiff had not demonstrated that the ALJ's findings lacked substantial evidentiary support. *Id.* Following that report and recommendation, plaintiff filed a motion for remand under sentence six. *Id.* The court found that second motion procedurally improper. *Id.* (citing E.D. Mich. L.R. 7.1(b)(2) and the well-settled law that parties may not raise arguments for the first time in a reply brief). The undersigned suggests that, similarly, here, plaintiff's motion for remand, filed after and in addition to her motion for summary judgment, is procedurally improper.

The undersigned further finds that, even if plaintiff's motion to remand pursuant to sentence six was not procedurally improper, the motion fails on the merits. Under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden to demonstrate that this evidence is "new" and "material" and that there is "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. "Good cause" is *not* established solely because the new evidence was not generated until after the

39

ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test.
*Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see
also Perkins v. Apfel*, 14 Fed. Appx. 593, 598-99 (6th Cir. 2001).  A plaintiff
attempting to introduce new evidence must explain why the evidence was not
obtained earlier and submitted to the ALJ before the ALJ's decision.  *See Hollon*,
447 F.3d at 485; *see also Brace v. Comm'r of Soc. Sec.*, 97 Fed. Appx. 589, 592
(6th Cir. 2004) (claimant's decision to wait and schedule tests just before the
hearing with the ALJ did not establish good cause); *Cranfield v. Comm'r of Soc.
Sec.*, 79 Fed. Appx. 852, 859 (6th Cir. 2003).  Additionally, in order to establish
materiality, plaintiff must show that the introduction of the new evidence would
have reasonably persuaded the Commissioner to reach a different conclusion.
*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Sizemore v. Sec. of Health &
Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*,
214 Fed. Appx. 547, 550 (6th Cir. 2007).

Plaintiff argues that the evidence contained in Exhibit 5F from Professional
Medical Center is new and that she has good cause for her failure to submit this
evidence at the time of her hearing because "[a]lthough these records existed at the
time of the hearing, they were not able to be obtained, due to the delay of the
medical facility, before the ALJ issued his decision."  (Dkt. 17).  Plaintiff
continues that "[d]espite his knowledge that there was outstanding medical

evidence showing Plaintiff's only on-going treatment, the ALJ issued his decision before consulting these records." *Id.* However, as the Commissioner points out in its response, the ALJ "graciously" held the record open four months following the October 11, 2011 hearing date to allow additional time to obtain these records, and nothing in the record indicates that plaintiff attempted to reach the ALJ at any time during the four months the ALJ held the record open to request additional time to keep the record open, or to explain any continuing difficulty in obtaining the records. Thus, assuming the records are "new," the undersigned concludes that plaintiff has not established "good cause" for remand under sentence six. *See Zizzo v. Comm'r of Soc. Sec.*, 2013 WL 5291663, at *14 (E.D. Mich. Sept. 19, 2013) (concluding that plaintiff has not established "good cause" for remand because, "[w]hile plaintiff alludes to some vague difficulties obtaining records from the VA, there is no explanation as to why some records were able to be submitted during the 45 day period the ALJ kept the record open after the hearing").

Moreover, even if plaintiff could establish "good cause," she has failed to establish that the records are "material," and thus has failed to meet her burden for a sentence six remand. To establish "materiality," plaintiff must explain how the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion. Here, plaintiff simply argues that

41

"without[] the inclusion of these medical records, Plaintiff's medical evidence is devoid of any treatment notes regarding her physical complaints." (Dkt. 17). However, the record does contain prior treatment notes from plaintiff's physicians, as well as notes from March 2011 consultative examinations, and plaintiff wholly has failed to argue or demonstrate *how* the additional evidence would have reasonably persuaded the ALJ to reach a different conclusion. *See Sizemore*, 865 F.2d at 711-12. The additional records merely document subsequent examinations during the 2010 and 2011 time period, but do not contain new diagnoses or any evaluations or opinions on plaintiff's functional ability. (*See* Tr. 268-88). It is well-settled that the mere existence of any condition from which plaintiff might have suffered does not necessarily mean that condition is "severe" under the Act. Notably, the Appeals Council considered these records in evaluating plaintiff's disability claims and found "this information does not provide a basis for changing the [ALJ's] decision." (Tr. 6). For these reasons, the undersigned concludes that plaintiff has failed to meet her burden to demonstrate that the evidence is "material." Accordingly, a sentence six remand is not appropriate and plaintiff's motion should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

43

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: April 15, 2014                s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on April 15, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kelie C. Schneider, Thomas J. Bertino, Jessie Wang-Grimm, Laura A. Sagolla.

                                     s/Tammy Hallwood
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov

44